UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Washington DC

| | |
|---|---|
| JANIE COLE ) | |
| 107 May Avenue ) | |
| Bridgeville, PA 15017 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No._____ |
| ) | **JURY TRIAL DEMANDED** |
| EARL A. POWELL, ) | |
| Director, National Gallery of Art ) | |
| 2000-B South Club Drive ) | |
| Landover, Maryland 20785 ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**
**FOR DECLARATORY JUDGMENT, DISCRIMNATION, AND RETALIATION**

COMES NOW, PLAINTIFF JANIE COLE, by counsel, Kevin Byrnes of Wade & Byrnes P.C., and files this Complaint alleging the following facts, violations of law and prayer for relief:

**PARTIES**

1. Ms. Janie Cole ("Ms. Cole" or "Plaintiff") is a resident of Pennsylvania.

2. Mr. Earl A. Powell is the Director, National Gallery of Art and has been named as the Defendant in this action on the basis of his role as the Director of the National Gallery of Art.

3. The National Gallery of Art ("Defendant" or "Agency" or National Gallery") is headquartered at 2000-B South Club Drive in Landover, Maryland 20785.

4. Plaintiff is seeking to relief under the Rehabilitation Act of 1973 ("The Rehabilitation Act"), 29 U.S.C. § 701, et seq.; Title VII of the Civil Rights Act of 1964

1

("Title VII"), 42 U.S.C. § 2000e, et seq, and The Family and Medical Leave Act of 1993 ("FMLA"), 29 USC §2601 et seq.

5. As these issues present federal questions arising under a federal statute, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

6. The acts and omission complained of in this case are properly before this court as they arose in the District of Columbia, and since the investigation of these acts and omissions also occurred in the District of Columbia. 28 U.S.C. § 1391; 42 U.S.C. § 2000e-5(f)(3).

## FACTS COMMON TO ALL COUNTS

7. Plaintiff is a Christian and is afforded anti-discrimination protection based upon her religion pursuant to 42 U.S.C § 2000e.

8. Ms. Cole is also protected by the Rehabilitation Act of 1973 due to her medical condition (depression) and because she was regarded as disabled by the Agency.

9. Ms. Cole, as an employee of the Agency, is entitled to use medical leave under the FMLA.

10. The Plaintiff filed an EEO complaint on the basis of religious discrimination because Jewish management was favoring Jewish employees over the Plaintiff, a Christian.

11. The Plaintiff filed an EEO action because she was denied a promotion to a GS-11 pay series on the basis of her religion.

12. Ms. Cole was denied the promotion from a GS-9 to a GS-11, although a desk audit revealed that she was, in fact, performing the functions of a GS-11.

13. The Plaintiff's co-workers, a majority of whom are not Christian, and many of whom are Jewish, singled-out the Plaintiff for her religion and failed to promote the Plaintiff in conformance with established civil service standards.

14. In settlement of her claim, the Agency sought to impose conditions whereupon Ms. Cole would be denied the relief established in the desk audit.

**COUNT ONE:**
**DECLARATION THAT SETTLEMENT AGREEMENT(S)**
**IS (ARE) UNENFORCEABLE**

15. Paragraphs 1-14 are re-alleged and incorporated by reference as if fully set forth herein.

16. On October 25, 2005, Ms. Cole executed a second in a series of at least two Settlement Agreements.

17. The Agency had already presented the Plaintiff with a different agreement than the one attached to the Complaint, which the Agency contends the Plaintiff signed.

18. It is unclear which agreement the Agency believes it is entitled to enforce or how many signed agreements the Agency entered into with Ms. Cole.

19. The Agency, not the Plaintiff, proposed a settlement of Ms. Cole's religious discrimination claims.

20. The Plaintiff signed a Settlement Agreement after consultation with the EEO Counselor, who later appears to have been involved in assisting the Agency in addressing the merits of Ms. Cole's complaints and in formulating positions taken on personnel issues effecting Ms. Cole. On a second occasion, the Agency presented and instructed the Plaintiff to sign a different Settlement Agreement.

21. The Plaintiff signed this contract as instructed by the Agency.

22.  Neither of the agreements presented to Ms. Cole and signed by Ms. Cole addressed her claims of discrimination based upon her religion, Christianity.

23.  The subsequent attempts to enforce the Settlement Agreement have no contractual basis and resulted in unwarranted scrutiny and interference with the Plaintiff's workplace conditions.

24.  The Agency has sought to enforce the Settlement Agreement and has sought to impose onerous and non-binding conditions and waivers upon the Plaintiff through the guise of a settlement of her discrimination claims against the Agency.

25.  The Agency's Settlement Agreement purports to contractually bind the Plaintiff from asserting any of her present *or future* rights to the GS-11 pay series under the FMLA, MSPB and Title VII.

26.  Indeed, Section 7 of the Settlement Agreement, purportedly waives "any and all rights to pursue, initiate, reinstate <u>any</u> claims, complaints, grievances, suits, actions or other proceedings if she is not promoted for fail[ing] to adhere to the terms of the Agreement."

27.  Section 6 states the Plaintiff "will not be promoted until such time as she is able to demonstrate her ability to enhance her use of leave."

28.  The Settlement Agreement as written unlawfully interferes with the Plaintiff's FMLA rights, and the waivers contained within the Settlement Agreement are ineffective to waive the Plaintiff's FMLA rights.

29.  The presence of the waiver renders the contract void as a matter of law.

30.  The law prohibits interfering with, restraining, or denying the exercise of or attempts to exercise any rights provided by the FMLA. 29 C.F.R. § 825.220(a)

4

31. According to the Settlement Agreement, the Plaintiff must "enhance her use" of medical leave. § 6.

32. Under the law it is unlawful to interfere with the exercise of an employee's rights under the FMLA, including discouraging an employee from using medical leave, 29 C.F.R. § 825.220(b); or categorizing the use of leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions, 29 C.F.R. § 825.220(c)

33. Employees and employers are incapable of waiving FMLA anti-interference provisions under 29 C.F.R. § 825.220(d).

34. The Agency's attempt to enforce these terms is capricious and evidences the Agency's bad faith. Further it is a violation of federal personnel rules and the Rehabilitation Act to render Ms. Cole's advancement conditional on her future medical conditions.

35. The FMLA conditions and waiver of FMLA rights came in response to the Plaintiff's EEO Complaint.

36. On February 28, 2006, the Plaintiff challenged the validity of a Settlement Agreement because Agency officials attempted to rely on the Settlement Agreement both as a defense to her EEO claims and as a mechanism to further retaliate against the Plaintiff for her asserting claims.

37. The Agency refused to accept the EEO allegations claiming that the Settlement Agreement precluded the bringing of such claims. The EEO officer who denied these claims was also the EEO officer who drafted the settlement agreement.

38. Subsequently, the Plaintiff filed a complaint with the Office of Federal Operations of the Equal Employment Opportunity Commission which has not yet ruled. More than 180 days have since elapsed.

39. The Settlement Agreement purports to vest greater subjectivity and discretion to Agency management regarding the workplace conditions of the Plaintiff than would ordinarily be permitted to neutral management officials if there were no "settlement" of Ms. Cole's discrimination claims and which is authorized by federal personnel laws governing the use of sick leave.

40. The Settlement Agreement contains onerous workplace conditions upon Ms. Cole which subjects her to unwarranted scrutiny for *de minimus* medical absences.

41. The Final Agency Decision, by upholding the Settlement Agreement, upholds the position that the Agency management, in the *settlement* of discrimination claims, may seek to cause the Plaintiff to relinquish her civil service rights to a GS-11 series promotion.

42. The Final Agency Decision upholding the Settlement Agreement fractured the Plaintiff's pending anti-discrimination allegations raised by the Plaintiff

43. The enforcement of the conditions in the Settlement Agreement was improper and not based upon objective evidence.

44. The Settlement Agreement is void because the written contract contains illegal and unenforceable terms.

45. The Settlement Agreement is nothing more than a conditional promise to promote the Plaintiff to a position she was already occupying under MSPB law.

46.     The written contract the Agency relies upon fails for a lack of consideration because the Plaintiff is not Jewish and the religious identity of the Plaintiff is the core of her allegations of discrimination and the very purpose of the Settlement Agreement.

47.     If the Settlement Agreement is upheld, then the Plaintiff faces a perpetual bar from promotion because the Settlement Agreement waives the Plaintiff's other federal rights, including MSPB rights.

48.     If the Settlement Agreement is declared invalid, the acts which gave rise to the Settlement Agreement become ripe once again for a factual inquiry. 29 C.F.R. § 1614.504 and Management Directive 110.

WHEREFORE the Plaintiff requests the rescission of the Settlement Agreement on the grounds that it is invalid, void on public policy grounds, lacks consideration, and is the product of mistake and fraud.

## COUNT TWO:
## RETALIATION FOR INVOKING TITLE VII

49.     Paragraphs 1-48 are re-alleged and incorporated by reference as if fully set forth herein.

50.     After filing the EEO claim, the Plaintiff was forced to endure more stringent workplace conditions and undue scrutiny by the Agency under the pretext of drafting and "enforcing" various settlement agreements.

51.     The Agency's conduct with respect to the "enforcement" of the Settlement Agreement is punitive and transparent.

52. The only purpose for including "last chance" contained within the Settlement Agreement was retaliatory, reflecting unlawful discriminatory animus and bad faith on the part of the Agency.

53. This treatment was motivated by a discriminatory animus based upon the Plaintiff's religion (Christianity), and her prior EEO activity.

54. This conduct evidences retaliation against the Plaintiff in violation of Title VII.

55. Through the Agency's attempted enforcement of the Settlement Agreement, the purpose for including the "last-chance" terms in the Settlement Agreement becomes manifest: prevent the Plaintiff from obtaining her GS-11 series.

56. The Agency's attempts to enforce illusory and illegal conditions upon the Plaintiff through the Settlement Agreement sought to vest unfettered managerial discretion without objective measure.

57. The Settlement Agreement requires that the subjective satisfaction by the Agency that Plaintiff has achieved:

   (a) "improved and sustained dependability" § 3 of Settlement Agreement;

   (b) that her use of medical leave supported by "adequate justification" § 5(b) of Settlement Agreement;

   (c) that the Plaintiff's use of medical leave only be granted in situations of a demonstrably supported *"bona fide"* emergency which requires the acceptance and review by the alleged discriminatory actors of medical documentation at no definitive standard of review; § 5(c) of Settlement Agreement; and

   (d) Plaintiff "enhance her use" of medical leave. § 6.

58. A conditional contract is valid if the conditions are not controlled by whim of promisor. Moran v. Audette, 217 A.2d 653 (D.C.App. 1966).

8

59. The Agency, in a disguise of a *settlement* of a discrimination claim brought *by* the Plaintiff, employs "last chance" terms, excessive waivers and un-quantifiable conditions to prevent the Plaintiff from ever obtaining the GS-11 promotion and to ostensibly resolve her claims *against* the Agency.

60. In July, 2005, Ms. Goode, the EEO official who wrote the agreement and sought its enforcement, recused herself from Ms. Cole's initial EEO filing due to the fact that Ms. Goode had written the position description and had participated in the selection of an employee for a GS-11 position for which Ms. Cole had competed.

61. Ms. Goode participated in advising management about how to address Ms. Cole's initial complaint, how to assess the veracity of her sick leave and how to assess whether Ms. Cole was, in fact, performing already as a GS-11.

62. Ms. Goode's recusal occurred after Ms. Goode had advised Ms. Cole of her EEO rights and how to proceed with her complaint.

63. The "promises" by the Agency to promote the Plaintiff, are nothing more than ruses to impose conditions upon the Plaintiff which cannot be met and which can only be met by waiving her federal statutory rights which are, in fact, incapable of being waived.

64. These additional workplace conditions would not have arisen but for the Plaintiff's participation in the EEO process and evidenced an unlawful retaliation borne out of the Plaintiff's desire to seek protection under Title VII.

WHEREFORE, Plaintiff requests that this Court enter judgment:

(a) declaring the acts and practices complained of to be in violation of Title VII;

(b) enjoining and restraining the Defendant from any further violations of the Title VII;

(c) directing the Defendant to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(d) directing Defendant to place Plaintiff in the position that she would otherwise have occupied, but for the retaliation against the Plaintiff for invoking her rights under Title VII;

(e) directing the Defendant to making the Plaintiff whole for all earnings, compensation and benefits she would have received but for the Defendant's discriminatory and otherwise wrongful actions, including, but not limited to, wages, supplements, bonuses, sales commissions, pension, severance benefits, benefits that would have otherwise been included in Plaintiff's pension plan(s), medical insurance, medical leave and personal leave, insurance policies, and other lost benefits;

(f) awarding Plaintiff any and all amounts owed to her that have been withheld in violation of Title VII, together with interest thereon;

(g) awarding the Plaintiff liquidated damages pursuant to Title VII in the form of back-pay;

(h) awarding the Plaintiff the costs of this action, together with reasonable attorneys' fees to the maximum extent available under the law; and

(i) directing the Defendant to making the Plaintiff whole for all compensatory and punitive damages arising from the their conduct, including but not limited to lost

wages, pain and suffering, medical expenses and other losses as may be discovered during discovery and at trial; and

(j) granting such other and further relief as this Court may deem just and proper.

## COUNT THREE:
## RETALIATION FOR INVOKING FMLA RIGHTS

65. Paragraphs 1-64 are re-alleged and incorporated by reference as if fully set forth herein.

66. As written and as enforced, the "terms" of the Settlement Agreement are predicated upon the Plaintiff's use of medical leave and the waiver of all her rights.

67. The *quid pro quo* envisioned in the terms of the Settlement Agreement is that the Plaintiff will not use medical leave; and, in return, she will be given a GS-11 series.

68. This purpose is illegal.

69. Accordingly, the Settlement Agreement, both on its face and the Agency's attempted enforcement of its unenforceable terms, renders the contract based upon an illegal subject matter, which renders the contract void as a matter of public policy and unlawful retaliation.

70. Since the Settlement Agreement contains a severability clause, rendering the entire contract void, its enforcement is a product of attempted retaliation.

WHEREFORE, Plaintiff requests that this Court enter judgment:

(a) declaring the acts and practices complained of to be in violation of the FMLA;

(b) enjoining and restraining the Defendant from any further violations of the FMLA;

(c) directing the Defendant to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

11

(d) directing Defendant to place Plaintiff in the position that she would otherwise have occupied, but for the retaliation against the Plaintiff for invoking her rights under the FMLA;

(e) directing the Defendant to making the Plaintiff whole for all earnings, compensation and benefits she would have received but for the Defendant's discriminatory and otherwise wrongful actions, including, but not limited to, wages, supplements, bonuses, sales commissions, pension, severance benefits, benefits that would have otherwise been included in Plaintiff's pension plan(s), medical insurance, medical leave and personal leave, insurance policies, and other lost benefits;

(f) awarding Plaintiff any and all amounts owed to her that have been withheld in violation of the FMLA, together with interest thereon;

(g) awarding the plaintiff liquidated damages pursuant to the FMLA in the form of back-pay;

(h) awarding the Plaintiff the costs of this action, together with reasonable attorneys' fees to the maximum extent available under the law; and

(i) directing the Defendant to making the Plaintiff whole for all compensatory and punitive damages arising from their conduct, including but not limited to lost wages, pain and suffering, medical expenses and other losses as may be discovered during discovery and at trial; and

(j) granting such other and further relief as this Court may deem just and proper.

## COUNT FOUR:
## UNLAWFUL TERMINATION
## IN RETALIATION FOR INVOKING TITLE VII

71. Paragraphs 1-70 are re-alleged and incorporated by reference as if fully set forth herein.

72. On July 10, 2006, Plaintiff made a request for counseling following her receipt of a letter placing her on leave restriction.

73. EEO Officer, Kelly Goode, acting on behalf of Agency management, and in consultation with the General Counsel's Office of the Agency, refused to allow Ms. Cole to obtain counseling.

74. On August 24, 2006, counsel for Ms. Cole wrote to the Associate General Counsel's Office to demand compliance with EEO law, and requested that Ms. Goode recuse herself from this process and to file a formal written demand for counseling.

75. Throughout her employment with the Agency, and since filing a complaint of discrimination on the basis of her religion (Christianity), Ms. Cole has been subjected to a continued and pervasive pattern of discrimination, retaliation and reprisal, which has included the improper and illegal hijacking of the EEO counseling process itself by Agency management.

76. By letter of August 24, 2006, and its attachments, Ms. Cole set forth the bases of her Complaint. This Complaint was deliberately ignored by Ms. Goode, who drafted and who at that time sought to enforce the illegal Settlement Agreements against the Complaint in retaliation of her prior EEO action.

77. The failure of the Agency to follow proper procedures was the result of the discriminatory and retaliatory animus of the Agency, and the fact that both the General Counsel' Office and the Agency EEO Officer infected the equal opportunity

counseling and complaint in-take process with their own bias contributed directly to the discriminatory work environment faced by Ms. Cole.

78. The Agency failed to process Ms. Cole's requests and has now compounded the error by failing to provide Ms. Cole with an advisement pursuant to 29 C.F.R. § 1614.105(b)(1).

79. The Agency failed to timely process the grievance within the thirty (30) day period set forth under 29 C.F.R. § 1614.105(d).

80. Ms. Cole demanded the submission be considered a formal complaint and that the Agency commence an investigation through a neutral, detached investigator pursuant to 29 C.F.R. § 1614.108.

81. The Agency refused to commence an investigation.

82. During this period, Ms Cole continued to suffer discrimination and in particular, due to her medical condition, was forced to use medical leave under the FMLA.

83. On July 20, 2006, Ms. Cole was forced to take unpaid medical leave pursuant to the FMLA because of the stress caused by the hostile work environment she faced and the retaliation she suffered. On September 19, 2006, that leave expired.

84. Ms. Cole has since suffered a constructive termination because her environment had become so hostile and infected with discriminatory and retaliatory animus, that she could not reasonably perform her duties at the Agency.

WHEREFORE, Plaintiff requests that this Court enter judgment:

(k) declaring the acts and practices complained of to be in violation of Title VII;

(l) enjoining and restraining the Defendant from any further violations of the Title VII;

(m) directing the Defendant to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(n) directing Defendant to place Plaintiff in the position that she would otherwise have occupied, but for the retaliation against the Plaintiff for invoking her rights under Title VII;

(o) directing the Defendant to making the Plaintiff whole for all earnings, compensation and benefits she would have received but for the Defendant's discriminatory and otherwise wrongful actions, including, but not limited to, wages, supplements, bonuses, sales commissions, pension, severance benefits, benefits that would have otherwise been included in Plaintiff's pension plan(s), medical insurance, medical leave and personal leave, insurance policies, and other lost benefits;

(p) awarding Plaintiff any and all amounts owed to her that have been withheld in violation of Title VII, together with interest thereon;

(q) awarding the Plaintiff liquidated damages pursuant to Title VII in the form of back-pay;

(r) awarding the Plaintiff the costs of this action, together with reasonable attorneys' fees to the maximum extent available under the law; and

(s) directing the Defendant to making the Plaintiff whole for all compensatory and punitive damages arising from their conduct, including but not limited to lost

wages, pain and suffering, medical expenses and other losses as may be discovered during discovery and at trial; and

(t) granting such other and further relief as this Court may deem just and proper.

## COUNT FIVE: UNLAWFUL TERMINATION IN VIOLATION OF THE REHABILITATION ACT

85.　Paragraphs 1-84 are re-alleged and incorporated by reference as if fully set forth herein.

86.　The Plaintiff suffers from a disability (depression) and was regarded as suffering from a disability by the Agency who sought to prevent Ms. Cole from using medical leave to treat her disability.

87.　As a result, the Agency altered the Plaintiff's workplace conditions and created an atmosphere which resulted in her constructive discharge.

WHEREFORE, Plaintiff requests that this Court enter judgment:

(a) declaring the acts and practices complained of to be in violation of the Rehabilitation Act;

(b) enjoining and restraining the Defendant from any further violations of the Rehabilitation Act;

(c) directing the Defendant to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(d) directing Defendant to place Plaintiff in the position, that she would otherwise have occupied but for the retaliation against the Plaintiff for invoking her rights under the Rehabilitation Act;

(e) directing the Defendant to making the Plaintiff whole for all earnings, compensation and benefits she would have received but for the Defendant's discriminatory and otherwise wrongful actions, including, but not limited to, wages, supplements, bonuses, sales commissions, pension, severance benefits, benefits that would have otherwise been included in Plaintiff's pension plan(s), medical insurance, medical leave and personal leave, insurance policies, and other lost benefits;

(f) awarding Plaintiff any and all amounts owed to her that have been withheld in violation of Title VII, together with interest thereon;

(g) awarding the Plaintiff liquidated damages pursuant to the Rehabilitation Act in the form of back-pay;

(h) awarding the Plaintiff the costs of this action, together with reasonable attorneys' fees to the maximum extent available under the law; and

(i) directing the Defendant to making the Plaintiff whole for all compensatory and punitive damages arising from their conduct, including but not limited to lost wages, pain and suffering, medical expenses and other losses as may be discovered during discovery and at trial; and

(j) granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Trial by jury is requested on all issues that may be considered by a jury.

Respectfully Submitted
JANIE COLE
By Counsel

WADE & BYRNES, P.C.

_____/s/_____
Kevin Byrnes, Esq. DC# 480195
616 N. Washington Street
Alexandria, Virginia 22314
Phone: 703/836-9030
Fax: 703/683-1543
Counsel for Janie Cole

JS-44
(Rev. 1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Janie Cole

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Kevin Bynres
Wade & Byrnes P.C.
616 N Washington St., Alexandria, VA 22314
703-836-9030 (tel)

## DEFENDANTS
Earl A. Powell, Dir. National Gallery of Art

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ● 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*
☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*
☐ 151 Medicare Act
**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)* OR ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964 and the Family Medical Leave Act

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE October 10, 2007    SIGNATURE OF ATTORNEY OF RECORD [signature]

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.