UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JANIE COLE,                                   )
                                              )
      Plaintiff,                         )
                                              )
      v.                                 )      Civil Action No. 07-1829 (RJL)
                                              )
EARL A. POWELL, Director of the               )
National Gallery of Art,                      )
                                              )
      Defendant.                         )
_____ )

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the National Gallery of Art

respectfully requests that the Court dismiss the Complaint in this action.  The reasons for this

motion are set forth in the accompanying memorandum in support.

A proposed order is attached.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/_____
HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
May 6, 2008                         (202) 616-5309

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANIE COLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1829 (RJL)** |
| | ) | |
| **EARL A. POWELL, Director of the** | ) | |
| **National Gallery of Art,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PROPOSED ORDER**

Upon consideration of Defendant's Motion to Dismiss, it is hereby

ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED that the Complaint in this matter is dismissed.

SO ORDERED.


Date: _____                                      _____
                                                        United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**JANIE COLE,**                                )
                                               )
    **Plaintiff,**                          )
                                               )
    **v.**                                 )          **Civil Action No. 07-1829 (RJL)**
                                               )
**EARL A. POWELL III, Director of the**        )
**National Gallery of Art,**                   )
                                               )
    **Defendant.**                          )
_____  )

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Janie Cole alleges that the National Gallery of Art discriminated against her in violation of Title VII of the 1964 Civil Rights Act, the Family and Medical Leave Act ("FMLA"), and the Rehabilitation Act.  Specifically, Cole, who is Christian, alleges that the National Gallery did not promote her from a GS-9 to a GS-11 position because of her religion.  Cole acknowledges that she signed a settlement agreement resolving this claim, but she contends that the settlement agreement is void and is itself retaliatory.  Cole seeks a declaratory judgment that the settlement agreement is unenforceable.  Cole also alleges that she suffers from depression, and that the National Gallery constructively discharged her when it failed to investigate properly her allegations of discrimination and when it "sought to prevent [her] from using medical leave to treat her disability."  (Compl. ¶ 86.)

As the National Gallery demonstrates below, the Court should dismiss Cole's Complaint pursuant to Rule 12(b)(6).  Cole's claim regarding the settlement agreement fails for two reasons.  First, she did not timely exhaust her administrative remedies for this claim.  EEOC regulations required Cole to inform an EEO Officer within 30 days that the settlement agreement was void.  However, Cole waited more than four months before doing so.  Second, the terms of

the settlement agreement are both clear and reasonable.  The agreement is not, therefore, unenforceable or retaliatory.

The Court should dismiss Cole's constructive discharge claims because an agency's alleged failure to investigate properly a discrimination complaint is not a viable claim under Title VII.  Moreover, Cole's allegation that the National Gallery "sought to prevent [her] from using medical leave" is belied by her own admission in the Complaint that the National Gallery approved her requests for medical leave.  Indeed, Cole asserts that at the time she resigned from the National Gallery she had exhausted all of her FMLA leave.  In these circumstances, she has failed to allege facts that state a claim for constructive discharge that is plausible on its face.

## BACKGROUND

Cole worked for the National Gallery as a Personnel Staffing Assistant, which is a GS-9 position.  (Compl. ¶ 12.)  In August 2005, she filed an EEO complaint alleging that the National Gallery denied her a promotion to a GS-11 position because of her religion.  (*Id.* ¶ 10.)  Cole, who is Christian, alleged in her EEO complaint that "Jewish management was favoring Jewish employees over" her.  (*Id.* ¶¶ 7, 10.)

In October 2005, Cole signed a settlement agreement with the National Gallery to resolve her EEO complaint.  (Compl. ¶ 16; Def.'s Ex. 1.)  Under the terms of the settlement agreement, Cole agreed to withdraw her EEO complaint.  (Def.'s Ex. 1 ¶ 2.)  Cole further agreed to waive any claims "which were or could have been raised on or before the effective date of" the agreement that relate to her claim of religious discrimination.  (*Id.* ¶¶ 2, 7.)

In return, the National Gallery agreed to promote Cole to a GS-11 position after 90 days if she "demonstrate[d] improved and sustained dependability in the area of scheduling leave in

advance, arriving on time, and maintaining reliable attendance during said ninety (90) day period." (*Id.* ¶ 4.)  The settlement agreement specified that Cole's "use of leave will be considered improved and her dependability to the organization enhanced during the [90-day period if] the following is demonstrated:"

> a) Cole is not tardy for work more than two times without adequate justification.  Being tardy means arriving at work more than 15 minutes after her regular start time.

> b) Cole schedules the use of any leave at least 24 hours in advance.  Cole may not have more than two unscheduled absences.

> c) Cole submits supporting documentation that reflects a bona fide emergency to justify unscheduled leave.  For example, any "medical absence will require medical certification from a health care professional stating the reason for the absence and provide a thorough explanation as to how [Cole] was incapacitated and unable to work."

(*Id.* ¶ 5.)  Cole may file a grievance based on any determination by the National Gallery that her medical documentation is insufficient.  (*Id.*)  The settlement agreement also stated that "if [Cole] is unable to fulfill the terms of [the agreement] . . . during this one-time 90-day period, she will not be promoted until such time as she is able to demonstrate her ability to enhance her use of leave."  (*Id.* ¶ 6.)

The settlement agreement further provided that: "Pursuant to 29 C.F.R. Section 1614.504, . . . if either party alleges a breach of the terms of this Agreement, the alleging party must notify the EEO Officer, in writing, of the alleged noncompliance within 30 days of when the party knew or should have known of the alleged breach."  (*Id.* ¶ 12.)  On November 29, 2005, Cole signed an "Amendment" to the settlement agreement that made clear its operative date was October 25, 2005.  (Def.'s Ex. 2.)

On January 24, 2006, Cole learned that, based on three unscheduled absences, the National Gallery was not promoting her to the GS-11 position.  (Def.'s Ex. 3.)  However, she did

not contact the EEO Officer until February 28, 2006 to assert that the agreement was void. (Compl. ¶ 36.)

## LEGAL STANDARD

This Court may dismiss Cole's Complaint pursuant to Rule 12(b)(6) if she has failed to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*). The focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support Cole's claims for relief. *Id.*

"On a motion to dismiss, the Court may properly consider a contract referred to in a complaint and central to a plaintiff's claim, even though the plaintiff failed to attach a copy of the contract." *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, 2005 WL 3273979, * 1, n.3 (D.D.C. Aug. 9, 2005). The Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, the Court may consider the three exhibits attached to this motion without converting it into a summary judgment motion.

## ARGUMENT

### I.    COLE'S CONTRACT CLAIMS ARE UNTIMELY (COUNTS I-III, V)

An employee challenging the validity of an agreement that settles a discrimination claim against a federal agency must timely exhaust her administrative remedies before filing suit in federal district court. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). The employee's failure to exhaust her administrative remedies in the time set forth by the Equal

4

Employment Opportunity Commission ("EEOC") bars her claim. *Herron v. Veneman*, 305 F. Supp.2d 64, 71 (D.D.C. 2004). The EEOC requires an employee who believes that an agreement is void to contact an EEO Officer within thirty days of when the employee knew or should have known that the agreement was void. *See* 29 C.F.R. § 1614.504(a); *Herron*, 305 F. Supp.2d at 71.

In this case, if Cole believed that the settlement agreement was void she never should have signed it. However, she did sign the settlement agreement on October 25, 2005. (Def.'s Ex. 1.) Cole also signed an Amendment to the settlement agreement on November 29, 2005 that made clear the operative date of the agreement was October 25, 2005. (Def.'s Ex. 2.) The language of the settlement agreement did not change after that date. Thus, by November 29, 2005, Cole had all the information necessary to determine whether the settlement agreement was void.

Cole's signature on the Amendment to the settlement agreement on November 29, 2005 marked the beginning of the thirty-day limitations period. *Cf. Bowden*, 106 F.3d at 438 (holding that the thirty-day limitations period begins when the employee has the information necessary to determine whether the agreement has been breached).[1] Cole should have notified the EEO Officer that she believed the settlement agreement was void by December 29, 2005. Her notice to the EEO Officer on February 28, 2006 is too late. *Herron*, 305 F. Supp.2d at 71 (court declined to "reach the merits of . . . whether there was a binding settlement agreement or not" because the plaintiff did not contact an EEO Officer within thirty days).

Moreover, even if the Court considers January 24, 2006 as the start of the thirty-day

---

[1] The thirty-day limitations period arguably started even earlier, when Cole first signed the settlement agreement on October 25, 2005. The substantive terms of the settlement agreement did not change after that date.

limitations period because that is when she learned that the National Gallery was not promoting

her to the GS-11 position (Def.'s Ex. 3), she still would not have timely exhausted her

administrative remedies.  Cole did not notify the EEO Officer that she believed the agreement

was void until February 28, 2006, *see* Compl. ¶ 36, which is more than thirty days later.[2]

*Herron*, 305 F. Supp.2d at 71.

## II.    COLE'S CONTRACT CLAIMS FAIL AS A MATTER OF LAW (COUNTS I-III, V)

Settlement agreements are governed by state contract law.  *Weaver v. Bratt*, 421 F.

Supp.2d 25, 32 (D.D.C. 2006).  In the District of Columbia, "a party's signature on a contract

binds that party to the terms of the contract[.]" *Id.*; *see also* 29 C.F.R. § 1614.504(a) (providing

that a settlement agreement is a binding contract).  A settlement agreement signed by both

parties is presumed to be valid.  *Gabrielian v. Gabrielian*, 473 A.2d 847, 850 (D.C. 1984).  The

party challenging the settlement agreement bears the burden of demonstrating that the agreement

is invalid.  *Isaac v. First Nat'l Bank*, 647 A.2d 1159, 1162-63 (D.C. 1994); *Gabrielian*, 473 A.2d

at 850.

In this case, Cole does not dispute that she and the National Gallery signed the settlement

agreement.  (Def.'s Ex. 1.)  Thus, under District of Columbia law as well as EEOC regulations,

the settlement agreement is presumed to be binding and valid.  *Gabrielian*, 473 A.2d at 850; 29

C.F.R. § 1614.504(a).  As the National Gallery demonstrates below, Cole has failed to

demonstrate that the settlement agreement is void.

---

[2] Although Counts II, III, and V of the Complaint assert claims of retaliation and
constructive discharge, these Counts are all predicated on the settlement agreement being void.
Therefore, Cole's failure to timely exhaust her administrative remedies regarding the settlement
agreement should bar these Counts in the Complaint as well as Count I.

### A.    COLE SETTLED HER FAILURE-TO-PROMOTE CLAIM

Cole alleges that the settlement agreement does not "address[] her claims of discrimination based upon her religion, Christianity." (Compl. ¶¶ 22, 46.) However, by its plain terms, the settlement agreement resolved the only EEO complaint that Cole filed against the National Gallery. (Def.'s Ex. 1, ¶¶ 1-2.) This EEO matter – as plaintiff's own Complaint recognizes – was premised on her belief that "Jewish management was favoring Jewish employees over [her], a Christian." (Compl. ¶ 10.) Cole alleged in the EEO complaint that a Jewish employee received a promotion to a GS-11 position that she should have received. (*Id.* ¶ 11.)

The settlement agreement explicitly resolved this EEO matter. (Def.'s Ex. 1, ¶¶ 1-2.) Paragraph 1 of the settlement agreement states that: "The following Agreement refers to the EEO matter filed with the EEO Office of the National Gallery of Art . . . under Title VII of the Civil Rights Act of 1964 in which the Complainant alleged discrimination on the basis of religion (Jewish) when she was not promoted." (Def.'s Ex 1, ¶ 1.) The remaining paragraphs of the settlement agreement also refer to her EEO complaint alleging religious discrimination. (*See, e.g.*, Def.'s Ex. 1, ¶ 2.) Thus, as the settlement agreement unambiguously states, Cole and the National Gallery resolved her EEO complaint based on religious discrimination. There is no merit to her allegation that the settlement agreement actually relates to some other unidentified claim.

### B.    THE WAIVER IN THE SETTLEMENT AGREEMENT IS VALID

Cole alleges that the settlement agreement is invalid because it "purports to contractually bind [her] from asserting any of her present *or future* rights to the GS-11 pay series[.]" (Compl.

¶ 25) (emphasis in original).  But the waiver provisions in paragraphs 2 and 7 of the settlement agreement are not prospective.  Rather, they make clear that Cole may not assert claims against the National Gallery that arose prior to the execution of the settlement agreement.  Paragraph 2 specifically states that: "The execution of this Agreement shall constitute the release and withdrawal of any claim[s] relating to this matter . . . which were or could have been raised **on or before** the effective date of this Agreement[.]"  (Def.'s Ex. 1, ¶ 2) (emphasis added).  Paragraph 7, in turn, reinforces this waiver by stating that Cole may not reinstate her EEO complaint if she "is not promoted because of her failure to adhere to the terms of this Agreement or for having engaged in conduct warranting discipline."  (Def.'s Ex. 1, ¶ 7.)  Thus, contrary to the allegation in Cole's Complaint, the settlement agreement does not require her to waive any discrimination claims that may arise in the future.

Moreover, courts have consistently concluded that settlement agreements containing similar language are valid.  *See, e.g.*, *Horn v. Dep.'t of the Army*, 284 F. Supp.2d 1, 12 (D.D.C. 2003) (noting that the "plaintiff agreed to fully release and forever discharge the Agency . . . from any and all claims he has held, or may now or in the future hold arising from the facts which led to these complaints.") *Aiken v. Reilly*, 1992 WL 52552 at * 1 (D.D.C. Feb. 28, 1992) (noting that, in the settlement agreement, the plaintiff "agreed to withdraw his complaint and waive all future claims arising out of the incidents described" therein).  This Court should similarly hold that the waiver provisions in the settlement agreement between Cole and the National Gallery are valid.

### C.    THE SETTLEMENT AGREEMENT DOES NOT INTERFERE WITH COLE'S FMLA RIGHTS

Cole contends that the settlement agreement, "as written[,] unlawfully interferes with

8

[her] FMLA rights[.]" (Compl. ¶¶ 28-30.)  But the settlement agreement does not even refer to the FMLA.  (Def.'s Ex. 1.)  The settlement agreement does condition Cole's receiving a promotion on her taking *scheduled* leave, but the agreement specifically permits her to take unscheduled medical leave as long as she provides supporting documentation justifying the absence.  (*Id.* ¶ 5(c).)  Thus, the settlement agreement does not interfere with Cole's ability to take FMLA leave.  Nor does it condition her promotion to a GS-11 position on her not taking FMLA leave.  (*Id.*)

Moreover, the National Gallery's request for supporting documentation from a health care professional is expressly permitted by the FMLA.  *See* 29 U.S.C. §§ 2613, 6383.  The FMLA provides that:  "An employing agency may require that a request for leave . . . be supported by certification issued by the health care provider of the employee[.]" *Id.*; *see also* 29 C.F.R. § 825.305.  The FMLA further states that "the employee shall provide, in a timely manner, a copy of such certification to the employer."  29 U.S.C. §§ 2613, 6383.  The National Gallery's request that Cole provide it with a medical certification when she took unscheduled medical leave is in full accord with the FMLA.

### D.    THE SETTLEMENT AGREEMENT IS SUPPORTED BY ADEQUATE CONSIDERATION

Cole also alleges that the contract is not supported by adequate consideration because the National Gallery's promise to promote her to a GS-11 position is "illusory."  (Compl. ¶¶ 56-59.)  A promise is illusory "if [the party making the promise] could avoid it at will."  *United States v. American Renaissance Lines, Inc.*, 494 F.2d 1059, n.16 (D.C. Cir. 1974).  Here, however, the National Gallery promised to promote Cole to a GS-11 position if she met very specific (and basic) leave requirements.  (Def.'s Ex. 1, ¶¶ 4-5.)  The National Gallery could not simply avoid

9

this obligation at will.  (*Id.*)  Indeed, the settlement agreement provided Cole with the right to file

a grievance if she believed that the agency had improperly determined that she did not meet

these leave requirements.  (*Id.* ¶ 5(e).)  The clear terms of the settlement agreement belie Cole's

allegation that the National Gallery's promise to promote her to a GS-11 position is illusory.

### III.    COLE'S RETALIATION CLAIMS FAIL (COUNTS II & III)

Cole oddly alleges that the settlement agreement itself is retaliatory.  (Compl. ¶¶ 49-70.)

In essence, Cole contends that she complained about not receiving a promotion because of her

religion; that she signed a settlement agreement under which she would receive a promotion if

she only took scheduled leave or received a medical certification for taking unscheduled leave

during a ninety day period; and that the National Gallery retaliated against her by monitoring her

use of leave during this ninety day period to determine whether she actually satisfied the

conditions for a promotion.  (*Id.*)  Cole's assertion that the settlement agreement itself is

retaliatory is implausible on its face.  *Twombly*, 127 S. Ct. at 1974; *In re Sealed Case*, 494 F.3d

at 145.  Her retaliation claims that are predicated on this theory should be dismissed.  *Id*.

Moreover, in order to state a claim for retaliation, Cole must show that an adverse action

occurred after she engaged in protected activity, and that there is a causal connection between

the two.  *Burlington Northern v. White*, 126 S. Ct. 2405, 2410-11 (2006); *Rochon v. Gonzales*,

438 F.3d 1211, 1220 (D.C. Cir. 2006).  Here, Cole specifically alleges that – as a result of her

signing the settlement agreement – the National Gallery "undu[ly] scrutinized" her use of

medical and other leave.  (Compl. ¶¶ 50-57.)  But, under the FMLA, the National Gallery is

*required* to maintain complete and accurate records of her use of medical leave.  *See* 29 C.F.R. §

825.500(a) (the "FMLA provides that covered employers shall make, keep, and preserve records

pertaining to their obligations under the Act[.]")  Thus, there is no causal connection between the National Gallery tracking her use of medical leave and any protected activity by Cole.  In addition, the National Gallery's tracking of Cole's use of medical leave, as it is required to do by federal law, does not constitute an adverse action.  *Cf. White*, 126 S. Ct. at 2410-11.  To the contrary, the National Gallery was tracking Cole's use of scheduled leave to determine whether she would qualify for a promotion.

Cole also asserts that the settlement agreement is retaliatory because it conditions her receipt of a promotion on her not using FMLA leave.  (Compl. ¶¶ 65-70.)  However, as demonstrated above in Section II.C, the settlement agreement did no such thing.  Rather, the settlement agreement specifically permits Cole to take unscheduled medical leave provided that she submits a medical certification.  (Def.'s Ex. 1, ¶ 5(c).)  The National Gallery's request for supporting documentation from a health care professional is specifically allowed under the FMLA, *see* 29 U.S.C. § 2613, and it is not retaliatory.

## IV.    COLE'S CONSTRUCTIVE DISCHARGE CLAIMS FAIL (COUNTS IV & V)

"A claim of constructive discharge requires the plaintiff to show that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment."  *Rosell v. Kelliher*, 468 F. Supp.2d 39, 50 (D.D.C. 2006).  Cole has not alleged sufficient facts to support a claim of constructive discharge in this case.

### A.    FAILURE TO INVESTIGATE ALLEGATIONS OF DISCRIMINATION

Cole contends that the National Gallery constructively discharged her when it failed to investigate properly her allegations of discrimination.  (Compl. ¶¶ 71-84.)  However, an

11

agency's failure to investigate allegations of discrimination is not actionable under Title VII.
*Keeley v. Small*, 391 F. Supp.2d 30, 45 (D.D.C. 2005); *Trout v. Lehman*, 1983 WL 578 at * 1
(D.D.C. July 7, 1983).  *See also Jordan v. Summers*, 205 F.3d 337, 342 (7thCir. 2000).

In *Keeley*, for example, the plaintiff alleged that the Smithsonian Institution interfered
with an EEOC investigation into his discrimination complaint and that the agency did not
properly investigate the complaint.  *Keeley*, 391 F. Supp.2d at 45.  In rejecting the plaintiff's
claim, the Court held that "there is no cause of action under Title VII for complaints of delay or
interference in the investigative process."  *Id.*  The reason is that "a claim regarding interference
with an EEOC investigation is not about a condition of employment," which is a necessary
precondition for a claim under Title VII.  *Id.*

In this case, even assuming the facts alleged in the Complaint are true, Cole has not
stated a claim for constructive discharge based on the handling of her EEO complaint.  *Id.*  The
National Gallery's investigation of Cole's discrimination complaint did not affect a condition of
her employment.  *Id.*; *see also  Trout*, 1983 WL 578 at * 1; *Jordan*, 205 F.3d at 342.  Thus, it
plainly did not make her "working conditions intolerable"or justify her conclusion that she had
no option but to leave her employment at the National Gallery.  *Rosell*, 468 F. Supp.2d at 50.

**B.    INTERFERENCE WITH FMLA LEAVE**

Cole also alleges that the National Gallery constructively discharged her when it "sought
to prevent [her] from using medical leave to treat her disability."  (Compl. ¶ 86.)  But Cole
admits in her Complaint that the National Gallery approved her requests to take medical leave
under the FMLA.  (*Id.* ¶ 83.)  Indeed, she asserts that the National Gallery permitted her to use

the full amount of medical leave that she is entitled to under the FMLA.[3]  (*Id.* ¶ 84.)  These admissions conclusively rebut Cole's allegation that the National Gallery constructively discharged her by seeking "to prevent [her] from using medical leave[.]" (Compl. ¶ 86.)

Moreover, Cole does not allege that the National Gallery ever prevented her from taking medical leave.  Nor does she allege any facts that support her constructive discharge claim.  Rather, she simply makes the conclusory assertion that "the Agency altered [her] workplace conditions and created an atmosphere which resulted in her constructive discharge."  (Compl. ¶ 87.)  But such legal conclusions are not sufficient to survive a Rule 12(b)(6) motion to dismiss.  *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Cole has not alleged any "facts to state a claim [of constructive discharge] that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

In addition, Cole worked for the National Gallery for more than 12 months at the time she resigned.  The FMLA does not provide, however, a private right of action for such federal employees.  *See Chandler v. Bernanke*, 531 F. Supp.2d 193, 201 (D.D.C. 2008); *Sullivan-Opst v. Powell*, 300 F. Supp.2d 85, 99 (D.D.C. 2004).  Accordingly, Cole's claim that the National Gallery interfered with her ability to exercise her FMLA rights should be dismissed.  *Id.*

---

[3] The National Gallery notes that, at the time she voluntarily resigned, Cole had additional FMLA leave that she could have, but did not, use.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion and dismiss the

Complaint in this action with prejudice.

Respectfully submitted,

 /s/
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
May 6, 2008                                    (202) 616-5309

# Exhibit 1

Settlement Agreement
In the Matter of
Informal Complaint
Janie Cole
And
National Gallery of Art

## SETTLEMENT AGREEMENT

1. The following Agreement refers to the EEO matter filed with the EEO Office of the National Gallery of Art (hereinafter "the Gallery") under Title VII of the Civil Rights Act of 1964 in which the Complainant alleged discrimination on the basis of religion (Jewish) when she was not promoted.

2. The parties agree that submission of this Agreement to the Gallery's EEO Office will constitute a request for closure of this matter. The execution of this Agreement shall constitute the release and withdrawal of any claim relating to this matter, which is pending in any forum. In addition, Complainant waives and relinquishes any and all rights to pursue, initiate, or reinstate any claims, complaints, grievances, or other proceedings, including claims for damages, costs, and attorney's fees, against the Gallery, its officers, agents, or employees, which were or could have been raised on or before the effective date of this Agreement in any forum, relating to all claims arising out of any incident, occurrence, act, or omission that formed or could have formed the basis of the subject complaint or EEO matter.

3. The parties further agree that this Settlement Agreement constitutes the full and complete settlement of matters referenced herein.

4. As evidence that this matter has been resolved in good faith the following will occur:

   a) Complainant will enhance her time and attendance for the next ninety (90) days by complying with the requirements of paragraph five of this Agreement. (This wording spells out her obligations to comply with each of the requirements of paragraph 5.)

   b) Michael Bloom, Personnel Officer, will recommend the Complainant for promotion to the GS 11 grade, Step 1, Human Resources Specialist (Recruitment & Placement), following a ninety (90) day period from the effective date of this Agreement, where the following conditions are met:

      i. Complainant demonstrates improved and sustained dependability in the area of scheduling leave in advance, arriving on time, and

maintaining reliable attendance during said ninety (90) day period, under the criteria set out in paragraph five (5) of this Agreement.

c) Upon receipt of Mr. Bloom's recommendation to promote Complainant, the Administrator <u>will</u> authorize Complainant's promotion unless there is pending disciplinary action against Complainant or a disciplinary action has been effected against Complainant. In the event that there is pending disciplinary action, the Administrator will await the outcome and will promote Complainant only in the event that the disciplinary action is not upheld.

d) Upon the Administrator's authorization to promote Complainant, the promotion will become effective no later than the next pay period from the time that Mr. Bloom recommends Complainant's promotion.

5. The parties further agree that the Complainant's use of leave will be considered improved and her dependability to the organization enhanced during the period set forth above where the following is demonstrated:

a) She is not tardy for work more than two times without adequate justification in a two month period. The parties agree that being late for work means arriving at work more than 15 minutes after Complainant's regularly scheduled start time, which is 8:00am.

b) The Complainant is required to schedule any use of leave at least twenty-four (24) hours in advance and will not have more than two unscheduled absences in a two month period. The parties agree that unscheduled absence means calling to request leave less than twenty-four (24) hours prior to the absence.

c) Where the Complainant requests unscheduled leave or is tardy within said ninety (90) day period, she must submit documentation for any tardiness or absence that reflects a bona fide emergency (i.e. any medical absence will require medical certification from a health care professional stating the reason for the absence and provide a thorough explanation as to how the Complainant was incapacitated and unable to work). If Gallery management determines that the documentation is adequate to support a bona fide emergency, the leave or tardiness will not be counted towards the limits in paragraphs 5(a) and 5(b).

d) The Complainant will submit the required documentation to her first level supervisor upon her return to work.

e) If Gallery management determines that documentation provided by Complainant is insufficient or inadequate to excuse the absence or tardiness, Complainant may grieve such a determination.

954

6.    Complainant agrees that if she is unable to fulfill the terms of paragraph 5 of this Agreement relative to an improvement in her time and attendance during this one-time 90-day period, she will not be promoted until such time as she is able to demonstrate her ability to enhance her use of leave.

7.    Complainant further agrees to waive and relinquish any and all rights to pursue, initiate, or reinstate any claims, complaints, grievances, suits, actions, or other proceedings, if she is not promoted because of her failure to adhere to the terms of this Agreement or for having engaged in conduct warranting discipline.

8.    It is understood that this Agreement does not constitute an admission by the Gallery of any violation of any law, rule or regulation on the part of the Gallery.

9.    Complainant and the Gallery agree to keep confidential and not to disclose, release, or otherwise make known to any individual or entity not a party to this Agreement: (a) the fact that this Agreement was reached; (b) the facts, contents, and terms of this Agreement, except: (a) as necessary for the parties to obtain legal advice; (b) pursuant to a court or administrative court order; (c) pursuant to a legislative request for information, (d) to other Gallery officials with a need to know in order to implement a provision of this Agreement; and, (e) as otherwise required by law.  In the event of breach of this confidentiality clause, the entire Settlement Agreement will become null and void and both parties will return to the status they held prior to the execution of this Agreement (i.e., Complainant will return to her current GS-9 position and pay).

10.   The Gallery agrees that there shall be no discrimination or retaliation of any kind against Complainant as a result of filing this charge or against any person because of opposition to any practice deemed illegal under the Rehabilitation Act, the Age Discrimination in Employment Act or Title VII of the Civil Rights Act of 1964, as amended, as a result of filing this charge or for giving testimony, assistance or participating in any manner in an investigation, proceeding, hearing or mediation, under the aforementioned statutes.

11.   The parties agree that this Agreement will not be used as evidence or otherwise in any pending or future administrative or civil action against the Gallery, except as may be necessary to enforce the terms of this Agreement.

12.   Pursuant to 29 C.F.R. Section 1614.504, any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties.  If either party alleges a breach of the terms of this Agreement, the alleging party must notify the EEO Officer, in writing, of the alleged noncompliance within 30 days of when the party

knew or should have known of the alleged breach.  If a party is found to be in breach of the Settlement Agreement, the terms of the Agreement may be specifically implemented or, alternatively, the complaint may be reinstated for further processing from the point processing ceased.

13.    This Agreement constitutes the entire understanding of the parties.

This Agreement is effective on the date of the last signature herein.

Complainant                                    Date    10/25/05

Gallery Management Official                    Date    11-15-05

4

**Exhibit 2**

AMENDMENT to the SETTLEMENT AGREEMENT
In the matter of
Informal Complaint
Janie Cole
And
National Gallery of Art

## AMENDMENT

By mutual agreement as evidenced by the signatures below, the parties amend the
settlement agreement, which was signed by the Complainant on October 25, 2005, and by
the Gallery Management Official on November 15, 2005, and entered into by the parties
as resolution of Complaint's informal EEO matter.  To remedy the delay that occurred in
the execution of the agreement, which was not caused by either party, the parties agree
that the effective date of the agreement is October 25, 2005.

_____          11/29/05
Complainant                              Date

_____          12-1-05
Gallery Management Official              Date

**Exhibit 3**

LAW OFFICES

# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1991
Phone: (703) 836-9030
Fax: (703) 683-1543
Web-site: www.WadeandByrnes.com



Gregory M. Wade (VA, DC, MD)
Kevin Byrnes (VA, DC)
Matthew T. Sutter (VA)

E-Mail: gwade@wblawpc.com
E-Mail: kbyrnes@wblawpc.com
E-Mail: msutter@wblawpc.com

March 21, 2006

**By Fax: 202/789-4638 and Mail**
Kelly Goode
National Gallery of Art
Office of Equal Employment Opportunity
2000B South Club Drive
Landover, MD 20785

Re: EEO Matter of Janie Cole

Dear Ms. Goode:

    We are providing the following responses to the questions you raise. We again ask you to advise us of who will see these answers and under what authority you are conducting fact finding.

1.    On what date did Ms. Cole learn that Mr. Bloom was not going to recommend her for promotion?

    By letter dated January 24, 2006 (see attachment 1).

2.    On what dates, if any was Ms. Cole absent from work during the time period from October 25, 2005 to January 24, 2006? Please provide any documentation to substantiate her absences, including leave slips, doctor's notes, etc. Also for each and every absence, please state:

    a.    Was the absence approved or excused;
    b.    Was the absence scheduled or unscheduled; and
    c.    The date the request for leave was submitted to her supervisor.

        i.    December 29, 2005, called in sick, out all day (see attachment 2).
            (a)    The absence was approved.
            (b)    The absence was unscheduled.

419

(c)     A leave slip was submitted to the supervisor on December 30, 2005 and signed by the supervisor on January 9, 2006.

ii.     December 30, 2005, left work one and a half hours early (see attachment 3).
(a)     The absence was approved verbally.
(b)     The absence was unscheduled.
(c)     N/A

iii.     January 4, 2006, called in sick, out all day (see attachment 4).
(a)     The absence was approved.
(b)     The absence was unscheduled.
(c)     A leave slip was submitted to the supervisor on January 5, 2006 and signed by the supervisor on January 9, 2006.

3.     On what dates, if any, was Ms. Cole tardy fo work during the time period from October 25, 2005 to January 24, 2006? For each and every date, please provide the following:

a.     How late did Ms. Cole arrive at work?
b.     Did Ms. Cole submit documentation for the tardiness? If so, please provide copies of all documents submitted; and
c.     Was Ms. Cole informed that the documentation was adequate? If so, by whom and when? Was Ms. Cole advised the documentation was not adequate? If so, by whom and when?

None

4.     Provide any and all information that shows that the Gallery did not meet its obligations under the settlement agreement, including any correspondence or other documentation.

We addressed these concerns in our correspondence and are requesting a legal conclusion.

Sincerely,

Kevin Byrnes

KB/amj
Enclosure: as noted
cc: Janie Cole

420

ATTACHMENT
#  1
(2 Pages)

January 24, 2006

To:      Janie Cole

From:    Michael Bloom, AP

Subject:  Performance under Settlement Agreement

We entered into a settlement agreement on October 25, 2005. As part of this
agreement, I committed to recommending your promotion to the GS-11 grade,
following a ninety (90) day review period, as long as you demonstrated improved
and sustained dependability in the area of scheduling leave in advance, arriving
on time, and maintaining reliable attendance during this period. As the ninety
(90) day review period ended on January 23, 2006, I have had an opportunity to
review your leave and attendance pursuant to our agreement.

Specifically, under paragraph five of our agreement, we agreed that your use of
leave would be considered improved and your dependability to the organization
enhanced where you:

  a) were not tardy for work more than two times without adequate justification
     in a two month period;

  b) scheduled any use of leave at least twenty-four (24) hours in advance and
     did not have more than two unscheduled absences in a two month period;

  c) submitted documentation for any tardiness or absence to reflect a bona
     fide emergency (i.e. any medical absence required medical certification
     from a health care professional stating the reason for the absence and
     provided a thorough explanation as to how you were incapacitated and
     unable to work); and,

  d) submitted the required documentation to Rick Decuir upon your return to
     work.

A review of your leave and attendance during the ninety day period covered by
our agreement indicates that you had unscheduled absences on December 29,
2005, and January 4, 2006. On these days, you called in at the beginning of the
day to alert us that you would not be in due to health-related reasons. However,
you failed to submit medical documentation reflecting that bona fide emergencies
existed, as our agreement required. Specifically, you submitted no
documentation for your absence on December 29, 2005. I do note that you
submitted a statement dated January 5, 2006, in which you said that you were ill
on January 4, 2006. Your statement added that you had contacted your doctor
and received instructions on medical care. However, you stated that since you

42¹

did not physically go to the doctor's office, the doctor could not provide a written statement for your absence on January 4, 2006. I do not consider your statement to be adequate documentation. Thus, I have determined that you failed to provide a written statement for these two absences, as our agreement required.

On Friday, December 30, 2005, you left work without authorization at 3:00 pm, an hour and a half prior to your regular 4:30pm departure time. On this date, you failed to request advance approval for your early departure and absence. When you were later questioned about this incident, you indicated that you decided to take work home with you. Although I recognize that Rick Decuir was not at work this day, clearly if there was a pressing need for a deviation from your regular schedule and a similar need to take work home, you should have asked Meredith Weiser or me for such approval. Instead, you summarily departed from work at 3:00 pm. In a separate memo, dated January 13, 2006, I explained my disapproval of your conduct on this day. I also explained my rationale for carrying you absent without leave (AWOL) for the one and a half hour of unexcused absence.

Based on the above unscheduled absences on December 29, 2005, December 30, 2005, and January 4, 2006, I have concluded that you have had more than two unscheduled absences in a two month period, during the ninety (90) day review period set out in our agreement. Pursuant to paragraph six of our agreement, I have decided not to recommend your promotion at this time because you have failed to maintain reliable attendance at work.

Consistent with our agreement, you may grieve my determination that you failed to submit documentation establishing that a bona fide emergency resulted in your unscheduled leave on December 29, 2005 and January 4, 2006. You may also grieve my January 13, 2006 letter informing you of your AWOL status on December 30, 2005. A grievance under the Administrative Grievance Procedure, Circular No. 23, must be submitted in writing to me at Stage one,* within fifteen (15) calendar days after you receive this decision. Consideration will be given to extending this time, if you submit a written request to me stating the reason(s) for desiring an extension. Full consideration will be given to any material you submit. In addition, you may be allowed official time-off to prepare your grievance if you submit a written request to me, explaining the amount of time needed. You have the right to be represented by an attorney or other representative at your own expense.

Separate from our agreement, I will revisit your progress as it relates to attendance and dependability by June 30, 2006, and make another assessment at that time. If you have any question, please do not hesitate to talk to me.

---

* If you are dissatisfied with the decision at Stage one, you may submit a Stage two grievance to John Robbins, the Deputy Administrator.

422