UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANIE COLE,<br><br>    Plaintiff,<br><br>v.<br><br>EARL A. POWELL III, Director of the<br>National Gallery of Art,<br><br>    Defendant. | Civil Action No. 07-1829 (RJL) |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Janie Cole, by counsel, hereby files her Memorandum in Opposition to Defendant's Motion to Dismiss under Rule 12 (b) (6) and for grounds states as follows:

## BACKGROUND

According to the Complaint herein, Plaintiff Janie Cole was an employee of the National Gallery of Art ("National Gallery") who held a GS-9 position until September 2006 when she was constructively terminated after the Defendant exhibited an ugly pattern of discrimination and retaliation because of the Plaintiff's Christian beliefs and her medical disability.

In August 2005, Ms. Cole filed an EEO complaint against the National Gallery, alleging that the National Gallery had failed to promote her to a GS-11 position (that she was already filling) because she was Christian and the National Gallery favored Jewish employees in its promotions. In response to that Title VII complaint, the National Gallery proposed a Settlement Agreement which imposed wholly unrelated and unlawful conditions on Ms. Cole as a condition precedent to possible advancement to the GS-11 position.

Specifically, rather than address the underlying claim of religious discrimination, the National Gallery cleverly concocted an illusory and illegal Settlement Agreement of all of Ms. Cole's discrimination claims, by imposing on her improper future working conditions in order for her to be considered by the agency for a promotion. Furthermore, the future requirements imposed on Ms. Cole "to demonstrate [ ] improved and sustained dependability in the area of scheduling leave, arriving on time and maintaining reliable attendance" were conveniently to be evaluated, scrutinized, and judged <u>entirely</u> at the whim of the National Gallery - the very agency that had discriminated against her. Thus, Ms. Cole was required to "document" to the National Gallery's satisfaction any "bona fide" emergencies requiring unscheduled leave or "tardiness" and provide "thorough explanations" of any alleged incapacity caused by bouts of illness or depression (her disability). Of course, if Ms. Cole was unable to fulfill the terms of the Settlement Agreement to the "satisfaction" of the National Gallery for 90 days, she would not receive her promotion to GS-11, <u>and</u> "she [would] not be promoted until such time as she is able to demonstrate [to the National Gallery] her ability to enhance her use of leave" (Defendant's Exhibit 1).

In exchange for the wholly illusory "benefit" of supposedly being <u>considered</u> for promotion, Ms. Cole effectively waived her rights under Title VII, the FMLA, and the Rehabilitation Act, among other protective laws, as well as all rights "to pursue, initiate, or reinstate any claims, complaints, grievances, suits, actions, or other proceedings, if she is not promoted because of her failure to adhere to the terms of this Agreement or for having engaged in conduct warranting discipline." Unaware of the deliberately designed pitfalls of the Settlement Agreement and based upon the "advice and guidance" of the EEOC official <u>appointed</u>

2

by the Defendant, Ms. Cole signed the Settlement Agreement on October 25, 2005 (Defendant's Exhibit 1) and an amended version on November 29, 2005 (Defendant's Exhibit 2).

Not surprisingly, Ms. Cole allegedly failed the National Gallery's unilateral evaluation of her performance in "demonstrat[ing] improved and sustained dependability in the area of scheduling leave in advance, arriving on time, and maintaining reliable attendance" during the 90 day test period after she signed the Settlement Agreement.

Thus, as far as the National Gallery is concerned, all of the following objectives have been neatly accomplished: (1) Ms. Cole was not promoted to the GS-11 position; (2) she has waived all of her claims based on religious discrimination or on other violations of law; (3) she can never again reinstate any such claim that she had or might have had against the agency, even though she did not get the promotion; and (4) she is now not even eligible for promotion "until such time as she is able to demonstrate her ability to enhance her use of leave."

Shortly after she was informed that she had failed the National Gallery's "test," Janie Cole met with counsel and she promptly notified the National Gallery, through counsel, on February 28, 2006, that the Settlement Agreement was void and illegal, as violating Title VII of the Civil Rights Act, the Family Medical Leave Act of 1993, the Rehabilitation Act of 1973, and the Age Discrimination in Employment Act. After six more months of facing the same discrimination and the hostile environment of retaliation for her EEOC complaint, Ms. Cole was constructively terminated by the agency in September 2006. All of those events are recited in detail in the instant Complaint.

## THE COMPLAINT

The instant Complaint contains seventeen pages of factual details and five counts: (1) Declaratory judgment for rescission of the Settlement Agreement as void and against public

policy and a product of fraud and mistake; Retaliation in violation of Title VII; (3) Retaliation in violation of the Family Medical Leave Act of 1993; (4) Unlawful termination (constructive termination under Title VII); and (5) Unlawful termination under the Rehabilitation Act.

## THE MOTION TO DISMISS

The National Gallery has moved this Court to dismiss the Complaint in its entirety under Rule 12 (b) (6). The lynchpin of the Defendant's motion is its contention that the Plaintiff's notice to the National Gallery that the Settlement Agreement is void was <u>untimely</u> under 29 C.F.R. § 1614.504 (a), and, therefore, her claims are "barred." The Defendant also contends that the Settlement is enforceable on its face and that the Plaintiff has failed to state viable claims for retaliation and unlawful termination.

By this Memorandum, the Plaintiff will demonstrate that the Defendant's legal contentions are not only erroneous, but in some instances they are flatly contradicted by the same authority that it relies on.

## ARGUMENT

### 1. The Plaintiff's Notice to the Defendant was Not Untimely Under Applicable Law

The National Gallery's primary efforts to get this case dismissed are grounded in its contention that Ms. Cole's claims are "untimely," <u>i.e.</u>, she failed to "timely exhaust her administrative remedies before filing suit in federal district court" (Defendant's Memorandum, pp. 4-6). In support of its argument that Ms. Cole's notice was too late, the Defendant cites 29 C.F.R. § 1614.504 (a) and <u>Bowden v. United States</u>, 106 F. 3d 433, 437 (D.C. Cir. 1997). However, this argument by the National Gallery is erroneous and seriously misstates both authorities.

4

To begin with, it is critical to note that Count I in this case seeks a declaratory judgment that the Settlement Agreement is <u>void</u> – not that it was breached or that the agency failed to comply with its terms. Thus, the National Gallery's reliance on 29 C.F.R. § 1614.504 (a) which imposes a 30 day period for notice of "alleged noncompliance" of a settlement agreement is both puzzling and unavailing.

That 29 C.F.R. § 1614.504 (a) deals only with "compliance" is manifestly clear by its title "Compliance with settlement agreements and final action." Furthermore, the text of the Regulation contains the following notice provision: "If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance." By its clear language, therefore, the 30 day period applies only to "noncompliance" of the settlement agreement – not to a notice that the agreement is <u>void</u>, which is exactly what the Plaintiff provided to the National Gallery on February 28, 2006.

Moreover, contrary to the Defendant's suggestion in its Memorandum, the 30 day notice period in the CFR is not a basis for dismissal under Rule 12 (b) (6), even if the notice provision were to apply here. In <u>Bowden v. United States</u>, 106 F. 3d 433 (D.C. Cir. 1997), the Court of Appeals made it quite clear that that 30 day period is not jurisdictional but rather an affirmative defense, which is subject to <u>proof</u> and to the equitable avoidance doctrines of tolling, estoppel, and waiver:

> [T]he administrative time limits created by the EEOC erect no jurisdictional bars
> to bringing suit. Rather, functioning like statutes of limitations, these time limits
> are subject to equitable tolling, estoppel, and waiver.

...

5

> Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. [citing cases] If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense.

Bowden, supra, at 438.

Accordingly, the Defendant's assertion that the 30 day notice provision in 29 C.F.R. § 1614.504 "bars" the Plaintiff's claim herein is plainly wrong for two reasons. First, Ms. Cole is not claiming "noncompliance" of the Settlement Agreement; she is claiming that it is void ab initio. Second, the 30 day notice provision in the Regulation does not "bar" any claim per se. It provides a possible defense to the agency, subject to proof. Therefore, there is no basis under Rule 12 (b) (6) to dismiss any of the Counts based on the alleged untimeliness of Ms. Cole's notice to the National Gallery.

## II. The Contract Claims are Properly Stated

The Defendant next argues that Ms. Cole's contract claims "fail as a matter of law," but then inexplicably supports that argument by stating that Plaintiff "has failed to demonstrate that the settlement agreement is void" (Defendants Memo, p. 6). However, "demonstrating" that a claim is valid or void requires evidence. Thus, the Defendant cannot possibly hope to succeed in utilizing Rule 12 (b) (6) to dismiss a claim that it contends has not yet been proven. See Isaac v. First National Bank, 647 A. 2d 1159, 1162-63 (D.C. 1999) (Party challenging the validity of an agreement has the burden of proving that invalidity).

### A. Rule 12 (b) (6) Standard

Under Rule 12 (b) (6) of the Federal Rules of Civil Procedure, the Court is required to "accept the allegations of the Complaint as true, draw all inferences in the Plaintiff's favor and [dismiss] only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Broudy v. Mather, 460 F. 3d 106, 116 (D.C. Cir 2006).

6

Thus, this Court need only find "any set of facts… consistent with the allegations" of the instant Complaint and find that relief could be granted by those facts to deny the Motion to Dismiss under Rule 12 (b) (6).

### B. Facts in Dispute

A review of the Complaint indicates that the following facts are in dispute on the claims of rescission; retaliation under Title VII; retaliation under FMLA; unlawful termination under Title VII; and unlawful termination under the Rehabilitation Act:

1. Whether the Jewish management at the National Gallery was favoring Jewish employees over the Plaintiff, a Christian (Complaint, par. 10).

2. Whether the Plaintiff was denied a promotion to a GS-11 pay series on the basis of her religion (Complaint, par. 11).

3. Whether Ms. Cole was denied the promotion from a GS-9 to a GS-11, although a desk audit revealed that she was, in fact, performing the functions of a GS-11 (Complaint, par. 12).

4. Whether the Plaintiff's co-workers, a majority of whom are not Christian, and many of whom are Jewish, singled-out the Plaintiff for her religion and failed to promote the Plaintiff in conformance with established civil service standards (Complaint, par. 13).

5. Whether in settlement of Plaintiff's claim, the Agency sought to impose conditions whereupon Ms. Cole would be denied the relief established in the desk audit (Complaint, par. 14).

6. Whether the Plaintiff signed a Settlement Agreement after consultation with the EEO Counselor, who later appears to have been involved in assisting the Agency in addressing

the merits of Ms. Cole's complaints and in formulating positions taken on personnel issues effecting Ms. Cole (Complaint, par. 20).

7. Whether the Plaintiff signed this contract as instructed by the Agency (Complaint, par. 21).

8. Whether neither of the agreements presented to Ms. Cole and signed by Ms. Cole addressed her claims of discrimination based upon her religion, Christianity (Complaint, par. 22).

9. Whether the subsequent attempts to enforce the Settlement Agreement resulted in unwarranted scrutiny and interference with the Plaintiff's workplace conditions (Complaint, par. 23).

10. Whether the Agency has sought to impose onerous and non-binding conditions and waivers upon the Plaintiff through the guise of a settlement of her discrimination claims against the Agency (Complaint, par. 24).

11. Whether the Agency's Settlement Agreement purports to contractually bind the Plaintiff from asserting any of her present or future rights to the GS-11 pay series under the FMLA, MSPB and Title VII (Complaint, par. 25).

12. Whether the Settlement Agreement as written unlawfully interferes with the Plaintiff's FMLA rights, and the waivers contained within the Settlement Agreement are ineffective to waive the Plaintiff's FMLA rights (Complaint, par. 28).

13. Whether the presence of the waivers renders the contract void as a matter of law (Complaint, par. 29).

14. Whether the National Gallery interfered with the exercise of the Plaintiff's rights under the FMLA, including discouraging the Plaintiff from using medical leave or categorizing

the use of the Plaintiff's leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions (Complaint, par. 32).

15. Whether the National Gallery attempted to force the Plaintiff to waive FMLA anti-interference provisions contrary to 29 C.F.R. § 825.220 (d) (Complaint, par. 33).

16. Whether the Agency's attempt to enforce these terms is capricious and evidences the Agency's bad faith (Complaint, par. 34).

17. Whether the agency attempted to violate the Rehabilitation Act by rendering Ms. Cole's advancement conditional on her future medical conditions (Complaint, par. 34).

18. Whether the Agency official s attempted to rely on the Settlement Agreement both as a defense to her EEO claims and as a mechanism to further retaliate against the Plaintiff for her asserting claims (Complaint, par. 36).

19. Whether the EEO officer who denied Plaintiff's EEO claims was also the EEO officer who drafted the settlement agreement (Complaint, par. 37).

20. Whether the Settlement Agreement purports to vest greater subjectivity and discretion to Agency management regarding the workplace conditions of the Plaintiff than would ordinarily be permitted by federal personnel laws governing the use of sick leave (Complaint, par. 39).

21. Whether the Settlement Agreement contains onerous workplace conditions upon Plaintiff which subjects her to unwarranted scrutiny for *de minimus* medical absences (Complaint, par. 40).

22. Whether the Final Agency Decision, by upholding the Settlement Agreement, would cause the Plaintiff to relinquish her civil service rights to a GS-11 series promotion (Complaint, par. 41).

23. Whether the Final Agency Decision upholding the Settlement Agreement fractured the Plaintiff's pending anti-discrimination allegations raised by the Plaintiff (Complaint, par. 42).

24. Whether the enforcement of the conditions in the Settlement Agreement was improper and not based upon objective evidence (Complaint, par. 43).

25. Whether the Settlement Agreement is void because it contains illegal and unenforceable terms (Complaint, par. 44).

26. Whether the Settlement Agreement is nothing more than a conditional promise to promote the Plaintiff to a position she was already occupying under MSPB law (Complaint, par. 45).

27. Whether the Settlement Agreement fails for a lack of consideration because the Plaintiff is not Jewish and the religious identity of the Plaintiff is the core of her allegations of discrimination and the very purpose of the Settlement Agreement (Complaint, par. 46).

28. Whether if the Settlement Agreement is upheld, the Plaintiff faces a perpetual bar from promotion because the Settlement Agreement waives the Plaintiff's other federal rights, including MSPB rights (Complaint, par. 47).

29. Whether after filing the EEO claim, the Plaintiff was forced to endure more stringent workplace conditions and undue scrutiny by the Agency under the pretext of drafting and enforcing the Settlement Agreements (Complaint, par. 50).

30. Whether the Agency's conduct with respect to the "enforcement" of the Settlement Agreement is punitive (Complaint, par. 51).

31. Whether the only purpose of the "last chance" contained within the Settlement Agreement was retaliatory, reflecting unlawful discriminatory animus and bad faith on the part of the Agency (Complaint, par. 52).

32. Whether this treatment was motivated by a discriminatory animus based upon the Plaintiff's religion (Christianity) and her prior EEO activity (Complaint, par. 53).

33. Whether the Agency's conduct evidences retaliation against the Plaintiff in violation of Title VII (Complaint, par. 54).

34. Whether the Agency's attempted enforcement of the Settlement Agreement is aimed at preventing the Plaintiff from obtaining her GS-11 series (Complaint, par. 55).

35. Whether the Agency has attempted to enforce illusory and illegal conditions upon the Plaintiff through the Settlement Agreement (Complaint, par. 56).

36. Whether the Settlement Agreement effectively provides the Agency with unfettered managerial discretion without objective measure (Complaint, par. 56).

37. Whether the Agency, under the guise of a settlement of a discrimination claim brought by the Plaintiff, employs "last chance" terms, excessive waivers and unquantifiable conditions to prevent the Plaintiff from ever obtaining the GS-11 promotion (Complaint, par. 59).

38. Whether in July 2005 Ms. Goode, the EEO official who wrote the Settlement Agreement and sought its enforcement, had written the position description and had participated in the selection of an employee for a GS-11 position for which Ms. Cole had competed (Complaint, par. 60).

39. Whether Ms. Goode participated in advising management about how to address Ms. Cole's initial complaint, how to asses the veracity of her sick leave and how to assess whether Ms. Cole was, in fact, performing already as a GS-11 (Complaint, par. 61).

40. Whether Ms. Goode's recusal occurred after Ms. Goode had advised Ms. Cole of her EEO rights and how to proceed with her complaint (Complaint, par. 62).

41. Whether the "promises" by the Agency to promote the Plaintiff, are nothing more than ruses to impose conditions upon the Plaintiff which cannot be met or which can only be met by waiving her federal statutory rights (Complaint, par. 63).

42. Whether these additional workplace conditions would not have arisen but for the Plaintiff's participation in the EEO process and evidenced an unlawful retaliation borne out of the Plaintiff's desire to seek protection under Title VII (Complaint, par. 64).

43. Whether as written and as enforced, the "terms" of the Settlement Agreement are predicated upon the Plaintiff's use of medical leave and the waiver of her rights to such leave (Complaint, par. 66).

44. Whether the *quid pro quo* envisioned in the terms of the Settlement Agreement is that the Plaintiff will not use medical leave; and, in return, she will be given a GS-11 series (Complaint, par. 67).

45. Whether this purpose is illegal (Complaint, par. 68).

46. Whether the Settlement Agreement, both on its face and the Agency's attempted enforcement of its terms, renders it void as a matter of public policy and unlawful retaliation under FMLA (Complaint, par. 69).

47. Whether on July 10, 2006 Plaintiff made a request for counseling following her receipt of a letter placing her on leave restriction (Complaint, par. 72).

48. Whether the EEO Officer, Kelly Goode, acting on behalf of Agency management, and in consultation with the General Counsel's Office of the Agency, refused to allow Ms. Cole to obtain counseling (Complaint, par. 73).

49. Whether throughout her employment with the Agency, and since filing a complaint of discrimination on the basis of her religion (Christianity), Ms. Cole has been subjected to a continued and pervasive pattern of discrimination, retaliation and reprisal, which has included the improper and illegal hijacking of the EEO counseling process itself by Agency management (Complaint, par. 75).

50. Whether Ms. Cole's EEO complaint was deliberately ignored by Ms. Goode, who drafted and who at the time sought to enforce the Settlement Agreements against the Plaintiff in retaliation of her prior EEO action (Complaint, par. 76).

51. Whether the failure of the Agency to follow proper procedures was the result of the discriminatory and retaliatory animus of the Agency (Complaint, par. 77).

52. Whether the Agency's General Counsel's Office and the Agency EEO Officer infected the equal opportunity counseling and complaint intake process with their own bias and whether they contributed directly to the discriminatory work environment faced by Ms. Cole (Complaint, par. 77).

53. Whether the Agency failed to process Ms. Cole's requests and has now compounded the error by failing to provide Ms. Cole with an advisement pursuant to 29 C.F.R. § 1614.105 (b) (1) (Complaint, par. 78).

54. Whether the Agency failed to timely process Plaintiff's grievance within the thirty (30) day period set forth under 29 C.F.R. § 1614.105 (d) (Complaint, par. 79).

55. Whether Ms. Cole demanded the submission be considered a formal complaint and that the Agency commence an investigation through a neutral, detached investigator pursuant to 29 C.F.R. § 1614.108 (Complaint, par. 80).

56. Whether the Agency refused to commence an investigation (Complaint, par. 81).

57. Whether during this period, Ms. Cole continued to suffer discrimination and in particular, due to her medical condition, was forced to use medical leave under the FMLA (Complaint, par. 82).

58. Whether on July 20, 2006 Ms. Cole was forced to take unpaid medical leave pursuant to the FMLA because of the stress caused by the hostile work environment she faced and the retaliation she suffered (Complaint, par. 83).

59. Whether Ms. Cole has since suffered a constructive termination because her environment had become so hostile and infected with discriminatory and retaliatory animus, that she could not reasonably perform her duties at the Agency (Complaint, par. 84).

60. Whether the Plaintiff suffers from a disability (depression) and was regarded as suffering from a disability by the Agency who sought to prevent Ms. Cole from using medical leave to treat her disability (Complaint, par. 86).

61. Whether, as a result, the Agency altered the Plaintiff's workplace conditions and created an atmosphere which resulted in her constructive discharge (Complaint, par. 87).

62. Whether the Agency's acts and practices complained of are in violation of the Rehabilitation Act (Complaint, par. 87).

In the Plaintiff's view the above facts in dispute provide this Court with a multitude of "sets of facts… consistent with the allegations" of all five counts of the Complaint to deny the Motion to Dismiss under Rule 12 (b) (6) Broudy, supra.

## CONCLUSION

For the reasons presented, the Plaintiff Janie Cole respectfully asks this Court to deny the Motion to Dismiss.

                    Respectfully submitted,
                    Janie Cole, Plaintiff
                    by Counsel

GRAD, LOGAN & KLEWANS, P.C.

By: _____ /s/ K. Byrnes _____
    Kevin Byrnes (DC Bar No. 480195)
    Francis X. McCullough (DC Bar No. 350918)
    3141 Fairview Park Drive, Suite 350
    Falls Church, Virginia 22042
    (703) 548-8400 (Telephone)
    (703) 836-6289 (Facsimile)
    *Counsel for Plaintiff*

## Certificate of Service

I hereby certify that on this 30th day of May, 2008, a true copy of the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss was delivered by filing and entering the same upon the electronic court filing website of the United States District Court of the District of Columbia, to the attention of Defendant's counsel, as follows:

JEFFREY A. TAYLOR
United States Attorney

RUDOLPH CONTREAS
Assistant United States Attorney

HARRY B. ROBACK
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-5309

                                                    /s/ K. Byrnes
Kevin Byrnes (D.C. Bar No. 480195)
Francis X. McCullough (D.C. Bar No. 350918)
3141 Fairview Park Drive, Suite 350
Falls Church, Virginia 22042
(703) 548-8400 (Telephone)
(703) 836-6289 (Facsimile)
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANIE COLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1829 (RJL) |
| ) | |
| EARL A. POWELL III, Director of the ) | |
| National Gallery of Art, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

This matter having come before the Court on this ____ day of _____, 2008, and based upon the submissions and arguments of counsel and for good cause shown it is hereby:

ORDERED that the Defendant's Motion to Dismiss the Complaint under Rule 12 (b) (6) is Denied.

IT IS FURTHER ORDERED that the Defendant shall file an Answer to the Complaint on or before _____.

_____
RICHARD J. LEON
UNITED STATES DISTRICT JUDGE