## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JANIE COLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 07-1829 (RJL)** |
| | ) | |
| **EARL A. POWELL III,** | ) | |
| **Director of the National Gallery of Art,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION
(March _17_, 2009) [#8]

Plaintiff Janie Cole ("Cole"), a Christian, claimed that the National Gallery

of Art ("the Gallery") discriminated against her when it failed to promote her from

a GS-9 to a GS-11 position, allegedly because of her religion.  A settlement

agreement resolved that discrimination claim, but, in her complaint before this

Court, plaintiff argued that the agreement was void and itself constituted

retaliation in violation of Title VII and the Family Medical Leave Act ("FMLA").

Plaintiff further alleged that the Gallery constructively discharged her by failing to

investigate her discrimination claims and by preventing her from using medical

leave to treat her depression.  Because plaintiff has failed to state a claim upon

which relief can be granted, the Court GRANTS defendant's motion to dismiss.

## BACKGROUND

Cole served as a personnel staffing assistant, a GS-9 position, at the

Gallery.  Compl. ¶ 12; Def. Mot. at 2.  In August 2005, she filed an Equal

Employment Opportunity complaint alleging that the Gallery denied her a promotion to a GS-11 position because of her religion, stating that "Jewish management was favoring Jewish employees" over her. Compl. ¶¶ 7, 10. The Gallery and Cole settled the EEO complaint with an agreement in October 2005. Compl. ¶ 16; Def. Mot. Exs. 1-2.[1]

Under the terms of the agreement, Cole would withdraw her EEO complaint and waive any religious discrimination claims "which were or could have been raised on or before the effective date of" the agreement. Def. Mot. Ex. 1 ¶ 2. In return, the Gallery would promote Cole to a GS-11 position after ninety days if she "demonstrate[d] improved and sustained dependability in the area of scheduling leave in advance, arriving on time, and maintaining reliable attendance during said ninety (90) day period." *Id.* ¶ 4. The agreement set out specific requirements for Cole during these ninety days, including scheduling leave 24 hours in advance and submitting documentation to justify unscheduled leave. *Id.* ¶ 5. The agreement also provided that, in the event of an alleged breach, the non-breaching party must notify the EEO Officer, in writing, of the non-compliance within thirty days of when the party knew or should have known of the breach. *Id.* ¶ 12.

---

[1] A court can consider materials outside the complaint without converting the motion to one for summary judgment when the documents are incorporated into the complaint and are central to the plaintiff's claim. *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C. 2002). Because the settlement agreement and the denial of Cole's promotion are mentioned in the complaint and are central to plaintiff's claim, this Court will consider those documents without converting defendant's motion.

Because Cole had three unscheduled absences during the ninety-day period, the Gallery denied Cole the promotion from a GS-9 to a GS-11 position on January 24, 2006. Def. Mot. Ex. 3. On February 28, 2006, Cole contacted an EEO Officer and asserted the agreement was void. Compl. ¶ 36. A few months later, on July 20, 2006, Cole began to take unpaid medical leave pursuant to the FMLA, which expired on September 19, 2006. Compl. ¶ 83.

Cole filed her suit in this Court on October 10, 2007, alleging that the settlement agreement was unenforceable, that the agency's enforcement of the agreement was retaliation in violation of Title VII and the Family Medical Leave Act ("FMLA"), and that defendant constructively terminated plaintiff in violation of Title VII and the Rehabilitation Act. Compl. ¶¶ 15-87. Defendant filed its motion to dismiss on May 6, 2008, arguing that plaintiff failed to state a claim for which relief can be granted. For the following reasons, I agree.

## DISCUSSION

Under Rule 12(b)(6), dismissal of a complaint is appropriate when a plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The factual allegations in the complaint must be enough "to raise a right to relief above the speculative level . . .

on the assumption that all the allegations of the complaint are true (even if doubtful in fact)." *Id.*

The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the court need not accept as true "legal conclusions cast in the form of factual allegations." *Id.*; *see also McManus v. District of Columbia*, 530 F. Supp. 2d 46, 64 (D.D.C. 2008).

Plaintiff's conception of the application of Rule 12(b)(6) appears to differ from this settled law. She states that "'demonstrating' . . . a claim is valid or void requires <u>evidence</u>," and because no evidence has been presented, defendant cannot succeed on its motion to dismiss. Pl. Opp. at 6. This argument misses the point. The question now before the Court is not whether the evidence supports plaintiff's claims; it is whether, accepting all facts in the complaint as true, plaintiff has stated a claim for which relief can be granted. She has not.

## III.   Contract Claims

### A.   *Exhaustion of Administrative Remedies*

An Equal Employment Opportunity Commission ("EEOC") complainant must timely exhaust her administrative remedies before filing suit in a federal district court. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Under these administrative procedures, an employee who believes an agency has failed to comply with a settlement agreement must contact an EEO officer within

4

thirty days of when the employee knew (or should have known) of the alleged noncompliance. 29 C.F.R. § 1614.504(a); *Herron v. Veneman*, 305 F. Supp. 2d 64, 71 (D.D.C. 2004).

However, Cole does not allege that the agency failed to comply with the settlement agreement, but that the agreement itself is void and unenforceable. Pl. Opp. at 5. Whether the exhaustion requirements of 29 C.F.R. § 1614.504(a), which references only noncompliance claims, apply in these circumstances is a question not easily resolved. *See Baker v. England*, 2002 WL 1841060, at *1 (EEOC Aug. 6, 2002) (requiring exhaustion under 29 C.F.R. § 1614.504(a) when complainant alleged he was coerced into signing the agreement). The Court need not decide that issue here, however, because even assuming the requirements of 29 C.F.R. § 1614.504(a) do not apply, defendant's motion to dismiss must still be granted because plaintiff has not alleged sufficient facts to support her claim that the settlement agreement is unenforceable.

### B.    *Enforceability of the Settlement Agreement*

Plaintiff makes several claims questioning the enforceability of the agreement, arguing that it is void on public policy grounds, lacks consideration, and is the product of mistake and fraud. Compl. at 7. While the basis for these claims is somewhat unclear from the complaint, none of these allegations are supported by the facts as plaintiff has alleged them or by the terms of the agreement itself.

Plaintiff first alleges that the agreement is unenforceable because it binds the plaintiff from asserting "any present or *future* rights" to a GS-11 position. Compl. ¶ 25. This is incorrect. The agreement waives claims "which were or could have been raised *on or before* the effective date." Def. Mot. Ex. 1 ¶ 2 (emphasis added). Settlement agreements containing this type of release are undoubtedly enforceable. *See, e.g., Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.*, 2005 WL 1541041, at *2 (D.D.C. Jun. 30, 2005) (settlement agreements releasing Title VII claims that were or could have been alleged in the underlying case "are routinely enforced").

Plaintiff next asserts that the agreement's requirement that she "enhance her use" of medical leave interferes with her rights under the FMLA and is therefore unlawful. Compl. ¶¶ 31-32. However, the agreement's notice and documentation requisites for the use of leave – requiring leave to be scheduled at least twenty-four hours in advance, and, in instances of unscheduled leave, requiring documentation that reflects a bona fide emergency – are in full accord with the FMLA. 29 C.F.R. § 825.303(a) ("When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable[.]"); 29 U.S.C. § 2613 ("An employer may require that a request for leave . . . be supported by certification issued by the health care provider of the eligible employee[.]"). Plaintiff's allegation that the terms of the agreement interfere with her FMLA rights is therefore without merit.

Finally, plaintiff argues the agreement fails for a lack of consideration because "Plaintiff is not Jewish and the religious identity of the Plaintiff is the core of her allegations of discrimination and the very purpose of the Settlement Agreement." Compl. ¶ 46. This argument is both unclear and untenable. The consideration offered in the agreement is sufficient: the Gallery agreed to promote plaintiff if she met specific and easily-attainable leave requirements. Def. Mot. Ex. 1 ¶¶ 4-5; *see* 2 Corbin on Contracts § 5.31 (1995) ("A promise can be consideration for a return promise even though it is conditional."). In return, plaintiff agreed to withdraw and waive her religious discrimination claims. Def. Mot. Ex. 1 ¶¶ 1-2. Plaintiff nowhere explains how the agreement fails to address her EEO claim, or where it fails for consideration. These claims, too, must therefore be dismissed.[2]

## II.    Constructive Discharge

Plaintiff alleges that the Gallery constructively discharged her in violation of two statutes: Title VII and the Rehabilitation Act. To support this claim, plaintiff must show "(1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 171 (D.D.C.

---

[2] The Court has considered plaintiff's other claims, including her allegation that the agreement is the product of mistake and fraud, Compl. at 7, and found them to be "legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276. As such, these claims cannot withstand a motion to dismiss.

2005). Because plaintiff has failed to satisfy this standard under either Title VII or the Rehabilitation Act, her claim must be dismissed.

Plaintiff does not allege any facts to support her constructive discharge claims under the Rehabilitation Act. She asserts that the Gallery constructively discharged her when it "sought to prevent [her] from using medical leave to treat her disability." Compl. ¶ 86. But she presents no facts in her complaint that show either that the employer deliberately made working conditions intolerable, or that any aggravating factor justified her conclusion that she had no choice but to end her employment. *See Turner*, 383 F. Supp. 2d at 171 (dismissing plaintiff's constructive discharge claim when plaintiff did not "allege any aggravating factor close in proximity to her resignation and justifying her conclusion that she had no option but to retreat to a lesser position, other than her own development of illness."). Plaintiff's sparse allegations are insufficient to withstand a motion to dismiss.

The basis for plaintiff's Title VII constructive discharge claim is equally flawed. The only support for the claim are plaintiff's allegations that an EEO Officer, after the settlement agreement was signed, "refused to allow Ms. Cole to obtain counseling," and that plaintiff experienced a "continued and pervasive pattern of discrimination, retaliation, and reprisal, which has included the improper hijacking of the EEO counseling process." Compl. ¶¶ 73, 75. But this alleged failure in EEO procedure is insufficient to establish even a discrimination claim because "there is no cause of action under Title VII for complaints of delay

8

or interference in the investigative process." *Keeley v. Small*, 391 F. Supp. 2d 30,

45 (D.D.C. 2005); *see also Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000).

Because "constructive discharge . . . requires a finding of discrimination *and* the

existence of certain aggravating factors," *Mungin v. Katten Muchin & Zavis*, 116

F.3d 1549, 1558 (D.C. Cir. 1997) (emphasis added) (internal quotations omitted),

plaintiff's failure to state a discrimination or retaliation claim necessarily means

that her constructive discharge claim fails as a matter of law.

Because plaintiff has failed to state a claim for constructive discharge under

either Title VII or the Rehabilitation Act, the defendant's motion to dismiss those

counts is granted.

## III.    Retaliation Claims

Plaintiff further alleges that the Gallery retaliated against her for her

protected activities under Title VII and the FMLA.  However, the Gallery's only

"retaliatory" activity, as alleged by plaintiff, was to enforce the terms of the

settlement agreement.  Such an allegation cannot withstand a motion to dismiss.

To state a claim for retaliation under either Title VII or the FMLA, plaintiff

must allege: (1) she engaged in protected behavior; (2) the employer took

materially adverse action against her; and (3) a causal relationship existed between

the protected activity and the subsequent adverse action. *Norden v. Samper*, 503

F. Supp. 2d 130, 156 (D.D.C. 2007); *see also Beard v. Preston*, 576 F. Supp. 2d

93, 102 n.11 (D.D.C. 2008).  A materially adverse action is one that "might have

dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

(2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1213 (D.C. Cir. 2006)).

Such an action is not present in this case.  The conditions imposed by the

settlement agreement – conditions to which the plaintiff agreed – are reasonable

restraints on the use of unscheduled absences and limitations on tardiness.  A

restriction on tardy arrivals or a required doctor's note in the event of an

unscheduled absence are conditions of employment known to workers

everywhere; to impose them on the plaintiff does not constitute a materially

adverse action.  *Cf. Norden*, 503 F. Supp. 2d at 157 (a proposed settlement

agreement that included, among other terms, a *prohibition* on the plaintiff's use of

medically necessary absences to extend deadlines constituted a materially adverse

action).  Plaintiff therefore fails to state a claim for retaliation.

### CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is

GRANTED.

RICHARD J. LEON
United States District Judge